UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | Jointly Administered under Case No. 16-43711 |
| Dakota Plains Holdings, Inc., et al, | Court File No. 16-43711 (MER) |
| Debtors. | Court File Nos.: |

|  |  |
|---|---|
| | 16-43712 |
| Dakota Plains Transloading, LLC, | 16-43715 |
| Dakota Plains Sand, LLC, | 16-43716 |
| Dakota Plains Marketing, LLC, | 16-43717 |
| DPTS Marketing LLC, | 16-43718 |
| Dakota Petroleum Transport Solutions, LLC, | 16-43721 |
| DPTS Sand, LLC, | |

Chapter 11 Cases
Judge Michael E. Ridgway

## AMENDED JOINT PLAN OF LIQUIDATION SUBMITTED BY DAKOTA PLAINS HOLDINGS, INC. AND ITS DEBTOR AFFILIATES

COUNSEL FOR DEBTORS

RAVICH MEYER KIRKMAN MCGRATH
NAUMAN & TANSEY, PA

Michael F. McGrath
Will R. Tansey
150 S. Fifth Street, Suite 3450
Minneapolis, MN  55402
Telephone:  612.317.4744

BAKER & HOSTETLER LLP

Elizabeth A. Green
Jimmy D. Parrish
SunTrust Center, Suite 2300
200 South Orange Avenue
Orlando, FL  32801-3432
Telephone:  407.649.4000

Jorian L. Rose
45 Rockefeller Center
New York, New York 10111
Telephone:  212.589.4200

June 9, 2017

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | Jointly Administered under<br>Case No. 16-43711 |
| Dakota Plains Holdings, Inc., et al, | Court File No. 16-43711 (MER) |
| Debtors. | Court File Nos.: |
| | 16-43712 |
| Dakota Plains Transloading, LLC, | 16-43715 |
| Dakota Plains Sand, LLC, | 16-43716 |
| Dakota Plains Marketing, LLC, | 16-43717 |
| DPTS Marketing LLC, | 16-43718 |
| Dakota Petroleum Transport Solutions, LLC, | 16-43721 |
| DPTS Sand, LLC, | |
| | Chapter 11 Cases<br>Judge Michael E. Ridgway |

## AMENDED JOINT PLAN OF LIQUIDATION SUBMITTED BY DAKOTA PLAINS HOLDINGS, INC. AND ITS DEBTOR AFFILIATES

DAKOTA PLAINS HOLDINGS, INC., DAKOTA PLAINS TRANSLOADING, LLC, DAKOTA PLAINS SAND, LLC, DAKOTA PLAINS MARKETING, LLC, DPTS MARKETING LLC, DAKOTA PETROLEUM TRANSPORT SOLUTIONS, LLC, AND DPTS SAND, LLC (collectively, the "Debtors") hereby propose the following Joint Plan of Liquidation, pursuant to Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*

## ARTICLE I. - DEFINITIONS

For the purpose of the Plan, the following terms will have the meanings set forth below:

**Administrative Agent** shall have the meaning ascribed to it in the definition of "Prepetition Loan Facility."

**Administrative Claim** shall mean a Claim for payment of an administrative expense of a kind specified in Section 503(b) of the Bankruptcy Code and of a kind referred to in

Section 507(a)(1) of the Bankruptcy Code, including without limitation, the actual, necessary costs, and expenses incurred after the commencement of the Bankruptcy Cases, of preserving Debtors' estates and operating the business of the Debtors, including wages, salaries or commissions for services, compensation for legal and other services and reimbursement of expenses awarded under Sections 330(a) or 331 of the Bankruptcy Code and all fees and charges assessed against the Debtors under Chapter 123 of Title 28, United States Code.

**Administrative Claims Bar Date** shall mean the date by which all Administrative Claims must be filed with the Bankruptcy Court to be an Allowed Administrative Claim.  The Administrative Claims Bar Date will be established by the Bankruptcy Court as a specific date prior to the Confirmation Date.

**Allowed Administrative Claim** shall mean all or that portion of any Administrative Claim, which has been or becomes allowed by Order of the Bankruptcy Court.

**Allowed Amount** shall mean the amount of an Allowed Claim.

**Allowed Claim** shall mean a Claim:  (a) with respect to which a proof of Claim has been filed with the Bankruptcy Court in accordance with the provisions of Section 501 of the Code and Rule 3001 and within any applicable period of limitation fixed by Rule 3003 or any notice or Order of the Bankruptcy Court; (b) deemed filed, pursuant to Section 1111(a) of the Code, by virtue of such Claim having been scheduled in the lists of Creditors prepared and filed by Debtors with the Bankruptcy Court, pursuant to Section 521(1) of the Code and Rule 1007(b), and not listed as disputed, contingent or unliquidated; or (c) deemed an Allowed Claim (including Allowed Secured Claims and Allowed Unsecured Claims) pursuant to the provisions of the Plan or any Final Order of the Bankruptcy Court. Unless otherwise provided in the Plan or unless deemed or adjudicated an Allowed Claim, pursuant to the provisions of the Plan or any Order of the Bankruptcy Court, an Allowed Claim shall not include any Claim as to which an

objection to or proceeding challenging the allowance thereof has been interposed, within any applicable period of limitation fixed pursuant to the Plan, by Rule 3003, or any Order of the Bankruptcy Court until such objection or proceeding has been overruled, dismissed, or settled by entry of a Final Order. Notwithstanding the filing of any such objection or the commencement of any such proceeding, a Claim may be temporarily allowed for voting purposes pursuant to the provisions of Rule 3018(a). Unless otherwise specified in the Plan or any Order of the Bankruptcy Court, an Allowed Claim shall not include or accrue interest on the amount of such Claim maturing, incurred otherwise, or arising subsequent to the Petition Date.

**Allowed Priority Non-Tax Claim** shall mean a Priority Non-Tax Claim to the extent such Priority Non-Tax Claim is or becomes an Allowed Claim.

**Allowed Priority Tax Claim** shall mean a Priority Tax Claim, pursuant to Bankruptcy Code Section 507(a)(8), to the extent such Priority Tax Claim is or becomes an Allowed Claim.

**Allowed Secured Claim** shall mean a Secured Claim to the extent provided under Section 506 of the Bankruptcy Code and to the extent that neither the Lien underlying the Claim is challenged nor the amount of the Claim is challenged as provided for herein.

**Allowed Unsecured Claim** shall mean an Unsecured Claim to the extent such Unsecured Claim is or becomes an Allowed Claim.

**Asset Purchase Agreement** shall mean that certain Asset Purchase Agreement dated December 19, 2016 and amended January 26, 2017 by and between the Debtors, as the sellers, and BioUrja Trading, LLC, as the buyer.

**Ballot** shall mean a ballot for voting in favor of or against the Plan.

**Bankruptcy Cases** shall mean these jointly administered bankruptcy cases of the Debtors, which are pending before the United States Bankruptcy Court for the District of Minnesota pursuant to Chapter 11 of the Bankruptcy Code.

{00354525 }                                  3

**Bankruptcy Code** shall mean title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, and any amendments thereto.

**Bankruptcy Court** shall mean the United States Bankruptcy Court for the District of Minnesota, in which Debtors' Bankruptcy Cases are pending, and any Court having jurisdiction to hear appeals or certiorari proceedings therefrom.

**Beneficial Interest** means the beneficial interests in the Liquidating Trust for the benefit of the Class 4 Allowed Unsecured Creditors.

**Bid Procedures Motion** shall mean the Debtors' *Notice of Motion of the Debtors for Entry of (I) an Expedited Order (A) Approving Bidding Procedures and Bid Protections in Connection with the Sale of Substantially All of the Debtors' Assets, (B) Approving the Form and Manner of Notice Thereof, (C) Scheduling an Auction and Sale Hearing, (D) Approving Procedures for the Assumption and Assignment of Contracts, and (E) Granting Related Relief and (II) an Order (A) Approving the Asset Purchase Agreement Between the Debtors and the Purchaser, (B) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of Liens, Claims, Encumbrances, and Interests, (C) Authorizing the Assumption and Assignment of Contracts, (D) Authorizing the Distribution of Excess Sale Proceeds to Secured Creditors, and (E) Granting Related Relief* (Doc. No. 8) filed on December 21, 2016.

**Cash** shall mean cash or cash equivalents, including but not limited to, checks, bank deposits, or other similar items.

**Causes of Action** shall mean any action, claim, cause of action, controversy, demand, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable

{00354525 }                                    4

directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law.  Causes of Action also include: (a) any right to setoff, counterclaim or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity; (b) the right to object to Claims or interests; (c) any claim pursuant to section 362 of the Bankruptcy Code; (d) any claim pursuant to Chapter 5 of the Bankruptcy Code; (e) any claim or defense, including fraud, mistake, duress and usury and any other defenses set forth in section 558 of the Bankruptcy Code; and (f) any state law fraudulent transfer claim.

**Claim** shall mean any right to payment whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or any right to an equitable remedy for breach of performance, if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

**Claims Bar Date** shall mean the date fixed by Order of the Bankruptcy Court as the last date for the filing of Claims in these Bankruptcy Cases.

**Class** shall mean any class into which Claims or Interests are classified by the Plan pursuant to Section 1123(a)(1) of the Bankruptcy Code.

**Class 1, Class 2, Class 3,** *etc.*, shall mean the specific Class into which Claims or Interests are classified pursuant to Article II of the Plan.

**Clerk** shall mean the Clerk of the U.S. Bankruptcy Court for the District of Minnesota, located at 301 U.S. Courthouse, 300 S. Fourth Street, Minneapolis, MN 55415.

**Confirmation** shall mean the process leading to and including the entry of the Confirmation Order, pursuant to Section 1129 of the Bankruptcy Code.

**Confirmation Date** shall mean the date of entry of the Confirmation Order by the Bankruptcy Court.

**Confirmation Hearing** shall mean the hearing scheduled by the Bankruptcy Court to consider confirmation of the Plan.

**Confirmation Order** shall mean the Order entered by the Bankruptcy Court confirming the Plan in accordance with the provisions of the Bankruptcy Code.

**Creditor** shall have the same meaning as set forth in Section 101(1) of the Bankruptcy Code.

**Debt** shall have the same meaning as set forth in Section 101(12) of the Bankruptcy Code.

**Debtors** shall mean, collectively, DP Holdings, DP Marketing, DP Sand, DP Transloading, DP Transport, DPTS Marketing, and DPTS Sand.

**DIP Order** shall mean that certain *Final Order (I) Authorizing the Debtors (A) To Utilize Cash Collateral of the Prepetition Secured Parties, (B) To Obtain Postpetition Secured Financing, and (C) To Provide Adequate Protection to the Prepetition Secured Parties, (II) And Granting Related Relief* (Doc. No. 72).

**Disclosure Statement** shall mean the Disclosure Statement approved for distribution by the Bankruptcy Court, pursuant to Section 1125 of the Bankruptcy Code, together with any amendments or modifications thereto.

**Disallowed Claim** shall mean a Claim which has been disallowed by a Final Order of the Bankruptcy Court.

**Disputed Claim** shall mean that portion (including, when appropriate, the whole) of a Claim against any of the Debtors which is not an Allowed Claims and which has not been disallowed by a Final Order of the Bankruptcy Court.

{00354525 }                                          6

**Distribution** shall mean the distribution of the applicable Plan Payments to the Holders of Allowed Claims in accordance with the terms of the Plan.

**DIP Agent** shall have the meaning ascribed to it in the definition of "DIP Facility."

**DIP Facility** shall mean that certain Postpetition Revolving Credit Agreement, dated as of January 3, 2017 by and between the Debtors, the lenders from time to time a party thereto (the "DIP Lenders"), and SunTrust Bank, in its capacity as administrative agent for the DIP Lenders (the "DIP Agent").

**DIP Lenders** shall have the meaning ascribed to it in the definition of "DIP Facility."

**DP Holdings** shall mean Dakota Plains Holdings, Inc.

**DP Marketing** shall mean Dakota Plains Marketing, LLC.

**DP Sand** shall mean Dakota Plains Sand, LLC.

**DP Transloading** shall mean Dakota Plains Transloading, LLC.

**DP Transport** shall mean Dakota Plains Transport Solutions, LLC.

**DPTS Marketing** shall mean DPTS Marketing LLC.

**DPTS Sand** shall mean DPTS Sand, LLC.

**Effective Date** shall mean a date within fourteen (14) days after the Bankruptcy Court has entered the Confirmation Order and provided that no appeal of the Confirmation Order is pending; *provided, however,* that the Effective Date shall not occur until all the preconditions to the occurrence of the Effective Date set forth in the Plan have been met or waived in accordance with the terms hereof. In the event that an appeal of the Confirmation Order is pending, the Effective Date may still occur on the [90th] day after the entry of the Confirmation Order provided that the conditions to effectiveness have been met or waived in accordance with the terms hereof.

**Equity Interest** shall mean an issued or authorized outstanding share or shares of common stock, a warrant or warrants for the issuance of such share or shares, other stock, stock equivalents, limited partnership interest, membership interest, or other equity instruments in the Debtors.

**Estate Assets** shall mean all the assets, property, and cash of the Debtors, as defined in section 541 of the Bankruptcy Code (excluding assets previously distributed, expended, or otherwise disposed of by the Debtors prior to the Confirmation Date not otherwise subject to recovery), wherever located or of whatever type of nature, existing as of the Confirmation Date, including, without limitation, the Causes of Action.

**Final Order** shall mean an Order or judgment of the Bankruptcy Court, which is no longer subject to appeal or certiorari proceedings and as to which no appeal or certiorari proceeding is pending or, in the discretion of the Debtors, if an appeal is filed and no stay has been entered.

**Holder** shall mean the legal or beneficial Holder of a Claim or Equity Interest and, when used in conjunction with a class or type of Claim or Equity Interest, means a Holder of a Claim or Interest in such Class or of such type.

**Impaired** shall mean the status of any Holder of a Claim or Equity Interest whose legal, contractual or equitable rights are altered, modified or changed by the proposed treatment under the Plan or whose treatment under the Plan is not provided for in Section 1124 of the Bankruptcy Code.

**Insider** shall have the same meaning as set forth in section 101(31) of the Bankruptcy Code.

**Intercompany Claim** shall mean any Claim held by a Debtor against another Debtor.

**Lien** shall have the meaning set forth in Section 101(37) of the Bankruptcy Code.

**Liquidating Trust** shall mean the trust that will come into existing on the Effective Date, and into which all of the Liquidating Trust Assets will vest pursuant to the Plan, and which trust shall be formed pursuant to and governed by the Liquidating Trust Agreement.

**Liquidating Trust Agreement** shall mean that certain agreement governing the Liquidating Trust dated on or before the Effective Date, substantially in the form included in the Plan Supplement.

**Liquidating Trust Assets** shall mean all of the Estate Assets, excluding only Cash subject to the Prepetition Lenders' Lien less the Liquidating Trust Carveout.

**Liquidating Trust Carveout** shall mean Cash in an amount to be provided in the Plan Supplement, which amount shall be retained by the Liquidating Trust pursuant to Article V(B) of the Plan.

**Liquidating Trustee** shall mean the trustee of the Liquidating Trust.  The Debtors shall designate the Liquidating Trustee in the Plan Supplement.

**Order** shall mean a determination, decree, adjudication, or judgment issued or entered by the Bankruptcy Court.

**Parties in Interest** shall mean any entity or person with a legal or beneficial interest at issue in the Bankruptcy Cases.

**Person** shall mean an individual, corporation, partnership, joint venture, trust, estate, unincorporated organization, or a government or any agency or political subdivision thereof.

**Petition Date** shall mean December 20, 2016, which is the date on which the Debtors each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

**Plan** shall mean this Joint Chapter 11 Plan of Liquidation, as amended or modified in accordance with the terms hereof or in accordance with the Bankruptcy Code.

**Plan Payments** shall mean payments made by the Debtors or the Liquidating Trustee, as applicable, pursuant to the terms of the Plan.

**Plan Supplement** shall mean a separate volume of documents to be filed with the Bankruptcy Court not less than 10 days prior to the Confirmation Hearing, and which shall including (i) the Liquidating Trust Agreement; (ii) the Debtors' designation of the Liquidating Trustee; and (iii) a post-confirmation budget.

**Plan Support Agreement** shall mean that certain Plan Support Agreement dated as of December 20, 2016 by and among the Debtors and the WFS Entities, and filed with the Bankruptcy Court on January 12, 2017 (Doc. No. 60).

**Prepetition** shall mean the period of time preceding the Petition Date and concluding on the Petition Date.

**Prepetition Lenders** shall have the meaning ascribed to it in the definition of "Prepetition Loan Facility."

**Prepetition Lender Claim** shall mean all Claims of the Prepetition Lenders and Administrative Agent arising under or in connection with the Prepetition Loan Facility. The Prepetition Lender Claim is secured by a first priority, perfected Security Interest in substantially all of the Debtors' assets.

**Prepetition Lender Deficiency Claim** shall mean the Allowed General Unsecured Claim portion of the Prepetition Lender Claims.

**Prepetition Lender Secured Claim** shall mean that portion of the Prepetition Lender Claim equal to (i) the Prepetition Lender Sale Proceeds <u>plus</u> (ii) the amount of Debtors' Cash subject to its Lien on the Effective Date <u>less</u> the Liquidating Trust Carveout.

**Prepetition Loan Facility** shall mean that certain Revolving Credit and Term Loan Agreement, dated as of December 5, 2014 (as amended by that certain Amendment No. 1 to

Revolving Credit and Term Loan Agreement dated as of August 6, 2015, that certain Amendment No. 2 and Waiver to Revolving Credit and Term Loan Agreement dated as of December 4, 2015, that certain Amendment No. 3 to Revolving Credit and Term Loan Agreement dated as of July 5, 2016, and that certain Amendment No. 4 to Revolving Credit and Term Loan Agreement and One Time Waiver of Borrower Requirements dated as of August 5, 2016, and as further amended, restated, supplemented, replaced, refinanced or otherwise modified from time to time) by and between DP Transloading, DP Sand, and DP Marketing, as borrowers (collectively, the "Borrowers"), DP Holdings, DPTS Marketing, DP Transport, and DPTS Sand, as guarantors (collectively, the "Guarantors"), the lenders from time to time a party to the Prepetition Loan Facility (the "Prepetition Lenders"), and SunTrust Bank, in its capacity as administrative agent for the Lenders and as issuing bank (the "Administrative Agent").

**Priority Non-Tax Claim** shall mean any Claim entitled to priority in payment as specified in Section 507(a) of the Bankruptcy Code, other than: (a) an Administrative Claim; or (b) a Priority Tax Claim.

**Priority Tax Claim** shall mean any Claim of a governmental unit (as defined in Section 101(27) of the Bankruptcy Code) of the kind entitled to priority under Sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**Professional** shall mean: (i) any professional retained in the Bankruptcy Cases pursuant to an Order of the Bankruptcy Court in accordance with Sections 327 or 1103 of the Bankruptcy Code; (ii) any attorney or accountant seeking compensation or reimbursement of expenses pursuant to Section 503(b) of the Bankruptcy Code; and (iii) any entity whose fees and expenses are subject to approval by the Bankruptcy Court as reasonable, pursuant to Section 1129(a)(4) of the Bankruptcy Code.

**Pro Rata Share** shall mean with respect to any Distribution, a distribution equal in amount to the ratio (expressed as a percentage) that the amount of such Allowed Claim bears to the aggregate amount of all Allowed Claims in its Class.

**PTS** shall mean Petroleum Transport Solutions, LLC, an affiliate of WFS.

**Purchaser** shall mean BioUrja Trading, LLC, a Delaware limited liability company, as Purchaser under the APA.

**Rule** or **Rules** shall mean the Federal Rules of Bankruptcy Procedure, as supplemented by the Local Bankruptcy Rules as adopted by the Bankruptcy Court.

**Sale Order** shall mean the *Order (A) Approving the Asset Purchase Agreement Between the Debtors and the Purchaser, (B) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (C) Authorizing the Assumption and Assignment of Contracts; (D) Authorizing the Distribution of Excess Sale Proceeds to Secured Creditors, and (E) Granting Related Relief* (Doc. No. 108) entered on January 27, 2017.

**Sale Proceeds** means the proceeds of the Sale Transaction, in the approximate amount of ten million eight hundred and fifty thousand dollars ($10,850,000), less certain reductions, as set forth in the original Asset Purchase Agreement attached to the initial sale motion (Doc. No. 9), and thereafter amended by the First Amendment to Asset Purchase Agreement (Doc. No. 100).

**Sale Transaction** shall mean the sale of substantially all assets of the Debtors to the Purchaser pursuant to Sale Order and in accordance with the terms of the Asset Pursuant Agreement.

**Secured Claim** shall mean a Claim secured by a Lien which is perfected and enforceable under applicable law, and which is not subject to avoidance under the Bankruptcy Code or other applicable non-bankruptcy laws. A Secured Claim which is challenged by the Debtors or

Liquidating Trustee shall only be an Allowed Secured Claim to the extent that such Claim is deemed to be an Allowed Secured Claim in the Plan or the underlying Security Interest is recognized as valid by the Bankruptcy Court and the difference in amount between such Creditor's Allowed Claim and its Allowed Secured Claim shall be an Allowed Unsecured Claim.

**Security Interest** shall mean "security interest" as set forth in Section 101(51) of the Bankruptcy Code.

**Unclaimed Property** shall mean any Cash, or any other property of the Debtors or Liquidating Trust which is unclaimed for a period of six (6) months after any Distribution to a Holder of an Allowed Claim.

**Unimpaired Class** shall mean any Class the members of which are the Holders of Claims or Equity Interests, which are not impaired within the meaning of Section 1124 of the Bankruptcy Code.

**Unsecured Claim** shall mean a Claim that arose or is deemed to have arisen prior to the Petition Date that is not: (i) an Administrative Claim; (ii) a Priority Tax Claim; (iii) a Priority Non-Tax Claim; or (iv) a Secured Claim.

**Unsecured Creditor** shall mean a Creditor holding an Allowed Unsecured Claim.

**United States Trustee** shall have the same meaning ascribed it to it in 28 U.S.C. § 581, *et seq.* and, as used in the Plan, refers to the Office of the United States Trustee for Region 12, located at 1015 U.S. Courthouse, 300 South Fourth St., Minneapolis Minnesota 55415.

**Western** means Western Petroleum Company, an affiliate of WFS.

**WFS** shall mean World Fuel Services Corporation.

**WFS Inc.** shall mean World Fuel Services, Inc., an affiliate of WFS.

**WFS Entities** shall mean, collectively, WFS and its affiliates, PTS, WFS, Inc., and Western.

{00354525 }                                                    13

**WFS Entities' Claim** shall mean, collectively, all Claims of the WFS Entities against the Debtors. For the avoidance of doubt, the WFS Entities' Claim shall include all of the WFS Entities' Claims arising from or in connection with: (i) the Crude Oil Services Agreement dated December 5, 2014 by and between DP Transport and WFS; (ii) the Crude Oil Services Master Agreement dated May 29, 2015 by and between DP Transport and WFS; (iii) the Membership Interest Purchase Agreement between DP Transloading, DP Marketing, and PTS; (iv) the Indemnification and Release Agreement dated December 5, 2014 by and between DP Holdings and WFS; (v) the Seller Guaranty and Security Agreement dated December 5, 2014 by and between DP Holdings, DP Transloading, DP Sand and DP Marketing, on the one hand, and WFS, on the other; (vi) the Seller Subordination Agreement dated as of December 5, 2014 by and between WFS, PTS, WFS Inc., Western, and the Administrative Agent; and (vii) the civil action pending in the U.S. District Court of the Southern District of New York as Case No. 1:16-cv-02774-RA.

## ARTICLE II. - CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims of the Debtors have not been classified, and the Holders thereof are not entitled to vote on the Plan. All other Claims and Equity Interests are classified and treated under Articles II-V of the Plan. The Classes, which shall be mutually exclusive, are as follows:

| Class | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| Class 1 | Priority Non-Tax Claims | Unimpaired | No (deemed to accept) |
| Class 2 | Prepetition Lender Claim | Impaired | Yes |
| Class 3 | WFS Entities' Claim | Impaired | Yes |
| Class 4 | General Unsecured Claims | Impaired | Yes |

| Class 5 | Equity Interests | Impaired | No (deemed to reject) |

## ARTICLE III. - ADMINISTRATIVE EXPENSES & PRIORITY CLAIMS

    A.    <u>Administrative Claims</u>.

        1.    <u>Filing Administrative Claims</u>.

Any Person, including any Professional who has rendered services to Debtors during the course of the Bankruptcy Cases, that asserts an Administrative Claim arising before the Confirmation Date, including Claims under Section 503(b) of the Bankruptcy Code, but excluding Administrative Claims for an expense or liability incurred and payable in the ordinary course of business by the Debtors, shall, on or before the Administrative Claims Bar Date or other date as set by Bankruptcy Court Order, file an application, motion, or request, as called for by the Rules, with the Bankruptcy Court for allowance of such Claim as an Administrative Claim specifying the amount of and basis for such Claim; *provided, however,* that applicants or movants who have previously filed applications, motions, or requests with the Bankruptcy Court need not file another such paper for the same Claim. Failure to file a timely application, motion, or request for allowance pursuant to this Section by any Holder of an Administrative Claim for an expense or liability incurred that is not payable in the ordinary course of business by the Debtors, other than such a Holder engaged or employed by the Debtors, shall bar such a claimant from seeking recovery on such Administrative Claim.

        2.    <u>Treatment of Administrative Claims</u>.

Except to the extent that a Holder of an Allowed Administrative Claim agrees to a different treatment, each Holder of an Allowed Administrative Claim shall receive, in full satisfaction, settlement and release of and in exchange for such Allowed Administrative Claim, Cash in an amount equal to such Allowed Administrative Claim, either:  (i) as soon as

reasonably practicable after the Effective Date, or (ii) if the Administrative Claim is not Allowed as of the Effective Date, thirty (30) days after the date on which such Administrative Claim becomes an Allowed Administrative Claim; provided, however, an Allowed Administrative Claim representing obligations incurred in the ordinary course of business of the debtors may be paid by the Debtors in the ordinary course, consistent with past practice of the Debtors and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to, such liabilities, without further action by the Holders of such Administrative Claims or further approval by the Bankruptcy Court.

B.     Priority Tax Claims.

Except to the extent that the Holder of an Allowed Priority Tax Claim agrees to a different treatment, on the first day of the full calendar quarter following the later of the Effective Date or the date that such Priority Tax Claim becomes an Allowed Claim, the Liquidating Trustee will commence quarterly payments in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, based on a five year amortization plus interest at five percent (5%), with final payment due on or before five years from the Petition Date. Such payments will be in full satisfaction of any Allowed Priority Tax Claim.

C.     U.S. Trustee Fees.

Fees payable to the United States Trustee in accordance with 28 U.S.C. 1930 shall be paid by the Liquidating Trustee as and when such fees become due.  Fees payable to the United States Trustee through the Confirmation Date shall be paid as of the Effective Date.  The Reorganized Debtors or the Liquidating Trustee will file monthly disbursement reports for each month that the bankruptcy case remains open.

{00354525 }                                        16

## ARTICLE IV.  - TREATMENT OF UNIMPAIRED CLASSES

    A.    <u>Class 1 — Priority Non-Tax Claims</u>.

The legal, equitable and contractual rights of the Holders of Class 1 Claims are unaltered by the Plan.  Except to the extent that a Holder of an Allowed Priority Non-Tax Claim agrees to different treatment, and after the date a Priority Non-Tax Claim becomes an Allowed Claim, on the Effective Date, or as soon thereafter as is reasonably practicable, the Holder of such Allowed Priority Non-Tax Claim shall receive cash from the Debtors or the Liquidating Trustee, as the case may be, in an amount equal to such Claim.  To the extent such claims exist, the Priority Non-Tax Claims are unimpaired and, as such, are not entitled to vote on the Plan.

## ARTICLE V. - TREATMENT OF IMPAIRED CLASSES.

    A.    <u>Determination of Allowed Amounts</u>.

Treatment prescribed for Claims and Equity Interests in the following sections of this Article V shall in all events refer exclusively to the Allowed Amount of each respective Claim. In the event the Allowed Amount of any Claim is not determined by agreement or otherwise prior to the Effective Date, then the treatment prescribed shall be deemed effective as of the date of the determination of such Claim by agreement or Final Order or as otherwise provided under the Plan. Notwithstanding Confirmation of the Plan, except as may otherwise be provided by Order of the Bankruptcy Court, the Debtors and the Liquidating Trustee reserve the right to object to any Claim (other than Claims deemed in the Plan to be Allowed Claims) for any reason authorized by applicable bankruptcy and nonbankruptcy law as well as the right to assert that any such Claim includes amounts subject to equitable subordination or other equitable relief.

B.      <u>Class 2 — Prepetition Lender Secured Claim</u>.

Class 2 consists of the Prepetition Lender Secured Claim.  As of December 20, 2016, the Debtors were indebted and liable to the Prepetition Lenders and Administrative Agent under the Prepetition Loan Documents, without objection, defense, counterclaim or offset of any kind, in in the aggregate principal amount of $56,925,000 plus accrued interest (including paid-in-kind interest) in the amount of $4,719,401.06, plus unpaid amendment fees thereon in the addition amount of approximately just over $1,019,250 plus, in connection with the foregoing amounts, certain expenses, and all other obligations payable under the Prepetition Loan Documents, including any attorneys', accountants', consultants', appraisers' and financial and other advisors' fees that are chargeable or reimbursable under the Prepetition Loan Documents.

In full satisfaction of the Prepetition Lenders' Allowed Class 2 Claim, the Prepetition Lenders shall, in addition to the previously received Prepetition Lender Sale Proceeds, retain their Lien, and (a) receive all the Cash subject to its Lien on the Effective Date, less the Liquidating Trust Carveout; and, (b) at the election of the Prepetition Lenders, either: (i) the proceeds of liquidation of all other Estate Assets subject to the Prepetition Lenders' Lien; or (ii) return of the Prepetition Lenders' collateral as the indubitable equivalent of such portion of the Secured Claim with the return to occur on the Effective Date.   To the extent the Prepetition Lenders elect to have the Liquidating Trustee administer and collect on the Prepetition Lenders' non-cash collateral, the Liquidating Trustee and the Prepetition Lenders will first reach agreement as to the Prepetition Lenders payment of the fees and costs associated with liquidating the Prepetition Lenders' non-cash collateral.

The Prepetition Lenders Deficiency Claim shall be treated as an Allowed General Unsecured Claim in Class 4.

The Class 2 Claim of the Prepetition Lenders is Impaired and, as such, the Prepetition Lenders are entitled to vote on the Plan.

C.   Class 3 — WFS Entities' Claim.

Class 3 consists of the WFS Entities' Claim.  Pursuant to the Bankruptcy Court's Order Authorizing the Debtors' Assumption of Plan Support Agreement (Doc. No. 97), the Bankruptcy Court authorized the Debtors' to assume the Plan Support Agreement between the WFS Entities and the Debtors.  Among other things, the Plan Support Agreement included a global settlement of the Debtors' Claims against the WFS Entities and of the WFS Entities' Claims against the Debtors and an acknowledgement of the WFS Entities that the WFS Entities' Claim, and all Distributions in respect thereof is subject to that certain Seller Subordination Agreement dated as of December 5, 2014 by and between WFS, PTS, WFS Inc., Western, and the Administrative Agent.

In full satisfaction of the WFS Entities' Allowed Class 3 Claims, and in accordance with the Court approved Plan Support Agreement, WFS shall receive an Allowed Unsecured Claim in the amount of $15,000,000.00, which shall be treated as an Allowed Unsecured Claim in Class 4, and which Claim shall not be subject to offset, objection, defense, or counterclaim.

The Class 3 Claim of the WFS Entities is impaired and, as such, the WFS Entities are entitled to vote on the Plan.

D.   Class 4 — Unsecured Claims.

Class 4 consists of all Allowed Unsecured Claims against the Debtors.  In full and final satisfaction of each Allowed Unsecured Claim, each Holder of an Allowed Unsecured Claim shall be entitled to a Pro Rata Share of the Beneficial Interests in the Liquidating Trust in accordance with the Liquidating Trust Agreement; provided that the Liquidating Trustee shall

make all Distributions in respect of the Allowed Unsecured Claim of the WFS Entities received

in satisfaction of the WFS Entities' Allowed Class 3 Claims to the Administrative Agent in

accordance with the terms of the Seller Subordination Agreement dated as of December 5, 2014

by and between WFS, PTS, WFS Inc., Western, and the Administrative Agent.

The Class 4 Claims of Unsecured Creditors are Impaired and, as such, the Holders

of Unsecured Claims are entitled to vote on the Plan.

E.    Class 5 — Equity Interests.

Class 5 consists of all Equity Interests in the Debtors.  The Debtors' Equity

Interests will be cancelled on the Effective Date of the Plan and the Liquidating Trustee will take

any necessary steps to formally dissolve each of the Debtors in accordance with applicable law.

Because the Class 5 Equity Interests are being cancelled, Holders of Equity Interests are deemed

to reject the Plan and, as such, they are not entitled to vote on the Plan.

## ARTICLE VI. — UNEXPIRED LEASES AND EXECUTORY CONTRACTS

To the extent the Debtors reject any executory contract or unexpired lease prior to the

Confirmation Date, any party asserting a Claim, pursuant to Section 365 of the Bankruptcy

Code, arising from the rejection of an executory contract or unexpired lease shall file a proof of

such Claim within thirty (30) days after the entry of an Order rejecting such contract or lease,

and any Allowed Claim resulting from rejection shall be a Class 4 Unsecured Claim. The

Debtors shall have through and including the hearing on Confirmation within which to assume or

reject any unexpired lease or executory contract; and, further, that in the event any such

unexpired lease or executory contract is not assumed (or subject to a pending motion to assume)

by such date, then such unexpired lease or executory contract shall be deemed rejected as of the

Confirmation Date.  For the avoidance of doubt, it is the Debtors' position that the executory

contracts listed in the schedule of executory contracts filed pursuant to Rule 1007(b)(1)(B) are

the only executory contracts to which any of the Debtors was a party on the Petition Date.

## ARTICLE VII. — MEANS OF IMPLEMENTATION

A.   Means of Implementation.

1.   Substantive Consolidation.

The Plan shall serve as a motion requesting the substantive consolidation

of the Debtors into a single entity.  Entry of the Confirmation Order shall constitute approval,

pursuant to section 105(a) of the Bankruptcy Code, effective as of the Effective Date, of the

substantive consolidation of the Bankruptcy Cases. On and after the Effective Date:  (i) all assets

and liabilities of the Debtors shall be merged, so that all of the assets of the Debtors shall be

available to pay all of the liabilities under the Plan; (ii) no distributions shall be made under the

Plan on account of Intercompany Claims; (iii) all guarantees by the Debtors of the obligations of

any other Debtor shall be eliminated so that any Claim against any Debtor and any guarantee

thereof executed by any other Debtor and any joint or several liability of the Debtor shall be one

obligation of the substantively consolidated Debtors; and (iv) each and every Claim filed or

Allowed, or to be filed or Allowed, in the case of any of the Debtors shall be deemed filed or

allowed against the substantively consolidated Debtors.

2.   Transfer of Property to the Liquidating Trust.

On the Effective Date, the Debtors shall be deemed to have irrevocably

transferred and assigned to the Liquidating Trust the Liquidating Trust Assets, to hold in trust for

the benefit of all Holders of Allowed Claims against any and all of the Debtors, pursuant to the

terms of the Plan and of the Liquidating Trust Agreement.

Unless otherwise provided by this Plan or the Liquidating Trust

Agreement, upon the Effective Date, title to the Liquidating Trust Assets shall pass to the

Liquidating Trust free and clear of all Claims and Equity Interests, in accordance with section 1141 of the Bankruptcy Code, except for validly perfected Liens on the Liquidating Trust Assets, which shall continue to encumber the Liquidating Trust Assets to the same validity, extent and priority as existed prior to the Effective Date.  For the avoidance of doubt, it is the intent of this section that all assets of the Debtors be transferred to the Liquidating Trust, and that after the Effective Date, the Debtors will retain no assets of any nature whatsoever.

        3.    <u>Dissolution of the Debtors</u>.

Following the transfers contemplated in Article V(A)(2), above the Debtors shall be deemed dissolved.  The Liquidating Trustee shall have all power to wind up the affairs of each of the Debtors under applicable state laws in addition to all rights, powers, and responsibilities conferred by the Bankruptcy Code, the Plan, the Liquidating Trust Agreement, and may, but shall not be required to, dissolve the Debtors under applicable state law.

        4.    <u>The Liquidating Trust</u>.

        a.    <u>Formation of Liquidating Trust</u>.  On or before the Effective Date, the Liquidating Trust Agreement shall be executed by the Debtors and the Liquidating Trustee, and all other necessary steps shall be taken to establish the Liquidating Trust and the Beneficial Interests therein.

        b.    <u>Material Terms of Liquidating Trust Agreement</u>.  The following provisions of this section are intended to summarize the material terms of the Liquidating Trust Agreement, which shall control the formation, operations and dissolution of the Liquidating Trust.  In the event of a conflict between the terms of this section and the terms of the Liquidating Trust Agreement, the terms of the Liquidating Trust Agreement shall control.

(1)     <u>Purpose of Liquidating Trust</u>.  The Liquidating Trust shall be established for the sole purpose of liquidating and distributing its assets, with no objective to continue or engage in the pursuit of a trade or business.

(2)     <u>The Liquidating Trustee</u>.  The Liquidating Trustee shall be designated in the Plan Supplement.  The Debtors' designation of the Liquidating Trustee shall be effective as of the Effective Date without the need for a further order of the Bankruptcy Court.

(3)     <u>Governance of Liquidating Trust</u>.  The Liquidating Trust shall be governed in accordance with the Liquidating Trust Agreement and consistent with the Plan.

(4)     <u>Authority of Liquidating Trustee</u>.   Subject only to the limitations contained in the Plan or in the Liquidating Trust Agreement, the Liquidating Trustee shall have, by way of illustration and not limitation, the following rights and obligations: (A) the power to hold, manage, sell and distribute the Liquidating Trust Assets in accordance with the Plan; (B) the power to prosecute and resolve, in the name of the Debtors or the Liquidating Trust, the Liquidating Trust Assets; (C) the power to prosecute and resolve objections to Disputed Claims against the Debtors that are payable from the Liquidating Trust Assets; (D) the power to perform such other functions as are provided in the Plan, the Liquidating Trust Agreement, and the Bankruptcy Code; and (E) any other act that the Liquidating Trustee deems in the best interest of the Liquidating Trust.

(5)     <u>Distribution of Liquidating Trust Assets</u>.  The Liquidating Trustee shall be responsible for making distributions from the Liquidating Trust as provided by the Plan and the Liquidating Trust Agreement.  Any Liquidating Trust Assets available for distribution shall be applied (a) first, to pay or reimburse, as applicable, the reasonable,

documented out-of-pocket fees, costs, expenses, and liabilities of the Liquidating Trust and Trustee, and (b) second, to distributions to Holders of Beneficial Interests.

(6)     Retention and Compensation of Liquidating Trustee and Liquidating Trustee's Professionals.   The Liquidating Trustee may retain counsel and other professionals to assist in the Liquidating Trustee's duties on such terms as the Liquidating Trustee deems appropriate as set forth in the Liquidating Trust Agreement.   The Liquidating Trustee may retain professionals who represented parties in interest in the Bankruptcy Cases. The Liquidating Trustee and professionals retained by the Liquidating Trustee shall be entitled to reasonable compensation from the Liquidating Trust as set forth in the Liquidating Trust Agreement.

(7)     Dissolution.   The Liquidating Trust and the Liquidating Trustee shall be discharged or dissolved, as the case may be, at such time as (i) the Liquidating Trust Assets have been liquidated; (ii) all distributions required to be made by the Liquidating Trust under the Plan have been made, but the Liquidating Trust shall not be dissolved later than three (3) years after the Effective Date absent Bankruptcy Court approval.

(8)     Limitation of Liability and Indemnification of Liquidating Trustee.   The Liquidating Trustee and the Liquidating Trustee's agents and professionals, shall not be liable for actions taken or omitted in their capacity as, or on behalf of, the Liquidating Trustee, except for those acts arising out of its or their own willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary duty or *ultra vires* acts, each as determined by Final Order of the Bankruptcy Court, and each shall be entitled to indemnification and reimbursement for fees and expenses incurred in defending any and all of its actions or inactions in its capacity as, or on behalf of, the Liquidating Trustee, except for actions or inactions for willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary duty or *ultra vires* acts,

each as determined by Final Order of the Bankruptcy Court.  Any indemnification claim of the Liquidating Trustee, its agents or professionals, shall be satisfied from the Liquidating Trust Assets.  The Liquidating Trustee shall be entitled to rely, in good faith, on the advice of its retained professionals.

(9)    <u>Non-Transferability of Beneficial Interests</u>.  The Beneficial Interests in the Liquidating Trust shall not be certificated and are not transferable (except as otherwise provided in the Liquidating Trust Agreement).

B.    <u>Comprehensive Settlement of Claims and Controversies</u>.

Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided under this Plan, the provisions of this Plan will constitute a good faith compromise and settlement of all Claims and Equity Interests or controversies relating to the rights that a Holder of a Claim or Equity Interest may have with respect to any Allowed Claim or Allowed Equity Interest or any Distribution to be made pursuant to the Plan on account of any Allowed Claim or Allowed Equity Interest.  Entry of the Confirmation Order will constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such claims or controversies and the Bankruptcy Court's finding that all such compromises are (a) in the best interests (x) of the Debtors and their respective estates and property, and (y) of the Claim and Equity Interest Holders; and (b) fair, equitable, and reasonable.

C.    <u>Additional Provisions</u>.

1.    <u>Procedures For Resolving Disputed Claims</u>.

a.    <u>Prosecution of Objections to Claims</u>.

Unless otherwise ordered by the Bankruptcy Court, after notice and a hearing, and except as otherwise provided in the Plan, only the Liquidating Trustee shall

have the right to make and file objections to Claims, subject to prior orders of the Bankruptcy Court.

Pursuant to the Plan, unless another time is set by order of the Bankruptcy Court, all objections to Claims and Equity Interests shall be filed with the Court and served upon the Holders of each of the Claims and Equity Interests to which objections are made within 90 days after the Effective Date.

Except as may be specifically set forth in the Plan and in the DIP Order, nothing in the Plan, the Disclosure Statement, the Confirmation Order or any Order in aid of Confirmation shall constitute, or be deemed to constitute, a waiver or release of any Claim, Cause of Action, right of setoff, or other legal or equitable defense that the Debtors had immediately prior to the commencement of the Bankruptcy Case, against or with respect to any Claim or Equity Interest. Except as set forth in the Plan, upon Confirmation, the Debtors and Liquidating Trust shall have, retain, reserve and be entitled to assert all such Claims, Causes of Action, rights of setoff and other legal or equitable defenses that the Debtors had immediately prior to the commencement of the Bankruptcy Cases as if the Bankruptcy Cases had not been commenced.

b.    Estimation of Claims.

Pursuant to the Plan, the Debtors or Liquidating Trustee may, at any time, request that the Bankruptcy Court estimate any contingent, disputed, or unliquidated Claim, pursuant to Section 502(c) of the Bankruptcy Code for purposes of determining the Allowed amount of such Claim, regardless of whether the Debtors or Liquidating Trustee have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any

appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, disputed, or unliquidated Claim for allowance purposes, that estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtors or Liquidating Trustee may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.

2.    <u>Cumulative Remedies</u>.

In accordance with the Plan, all of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court. Until such time as a Claim becomes or is otherwise deemed in this Plan to be an Allowed Claim, such Claim shall be treated as a Disputed Claim for purposes related to allocations, Distributions, and voting under the Plan.

3.    <u>Disallowance of Certain Claims and Equity Interests</u>.

According to the Plan, all Claims held by Persons against whom the Debtors have obtained a Final Order establishing liability for a cause of action under Sections 542, 543, 522(f), 522(h), 544, 545, 547, 548, 549, or 550 of the Bankruptcy Code shall be deemed disallowed Claims, pursuant to Section 502(d) of the Bankruptcy Code, and Holders of such Claims may not vote to accept or reject the Plan, both consequences to be in effect until such time as such causes of action against that Person have been settled or resolved by a Final Order and all sums due the Debtors by that Person are turned over to Debtors or Reorganized Debtors.

4.    <u>Controversy Concerning Impairment</u>.

If a controversy arises as to whether any Claims or Equity Interests or any Class of Claims or Equity Interests are Impaired under the Plan, the Bankruptcy Court, after notice and a hearing, shall determine such controversy before the Confirmation Date. If such controversy is not resolved prior to the Effective Date, the Debtors' interpretation of the Plan shall govern.

5.    <u>No Distribution Pending Allowance</u>.

Notwithstanding any other provision of the Plan, if any portion of a Claim is a Disputed Claim, no Plan Payment or Distribution shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.  On or after the Effective Date, if any Disputed Claim becomes an Allowed Claim, the Liquidating Trustee shall distribute to the Holder thereof the Distributions that such Holder would have received had its Claim been Allowed on the Effective Date.

## ARTICLE VIII. — MISCELLANEOUS

A.    <u>Effects of Confirmation</u>.

1.    <u>Amendments to the Plan</u>.

The Debtors reserve all rights to amend, alter, or withdraw this Plan before conclusion of the hearing on Confirmation and to amend, modify, or alter this Plan after the Confirmation Date, all in accordance with the applicable provisions of the Bankruptcy Code.

2.    <u>Authority to Effectuate the Plan</u>.

Upon the entry of the Confirmation Order by the Bankruptcy Court, all matters provided under the Plan will be deemed to be authorized and approved without further approval from the Bankruptcy Court. The Debtors and Liquidating Trustee shall be authorized, without further application to or Order of the Bankruptcy Court to take whatever action is

necessary to achieve consummation and carry out the Plan in accordance with this Plan and the Bankruptcy Code.

       3.      <u>Post-Confirmation Status Report</u>.

Within 120 days of the entry of the Confirmation Order, the Debtors or Liquidating Trustee will file a status report with the Bankruptcy Court explaining what progress has been made toward consummation of the confirmed Plan. The status report will be served on the United States Trustee and those parties who have requested special notice post-confirmation. The Bankruptcy Court may schedule subsequent status conferences in its discretion.

B.      <u>Conditions to Effectiveness</u>.

The Effective Date shall not occur until all of the following conditions have been satisfied or waived in writing by the Debtors:

       1.      The Confirmation Order shall have become a Final Order; *provided, however,* that, if an appeal of the Confirmation Order is filed but no stay is granted in connection with the appeal, the Debtors may in writing elect to permit the Effective Date to occur notwithstanding the pendency of the appeal.

       2.      Inclusion in the Confirmation Order of an injunctive provision staying, restraining, and enjoining all Persons, except as set forth in the Plan, from commencing, enforcing, perfecting, or setting off any Claim, judgment, or Equity Interest against the Debtors, or any property thereof, or against any of the Debtors' transferees for the purposes of, directly or indirectly, collecting, recovering, or receiving payment of, on, or with respect to, any Claim or Equity Interest; provided, that such injunctive provision shall not prevent any governmental unit from enforcing such governmental unit's police or regulatory power.

       3.      All ancillary documents necessary to implement and confirm the Plan have been approved by the Debtors and Reorganized Debtors, unless waived in writing.

{00354525 }                       29

4.      All actions and all agreements, instruments or other documents necessary to implement the terms and provisions of the Plan are effected or executed and delivered.

5.      All authorizations, consents and regulatory approvals, if any, required by the Debtors in connection with the consummation of the Plan are obtained and not revoked.

6.      Upon the satisfaction or waiver of each of the foregoing conditions, the Debtors shall so notify the Bankruptcy Court, and upon the filing of such notice the Plan shall become effective without further Order of the Bankruptcy Court, provided that all of the conditions to effectiveness of the Plan set forth herein have been met or waived by the Debtors.

C.      <u>Exculpation and Limited Liability</u>.

*None of the Debtors, the Administrative Agent, the Prepetition Lenders, the DIP Lenders, the DIP Agent, the WFS Entities, or their respective principals, shareholders, members, officers, directors, employees, affiliates, agents, professionals, or representatives (collectively the "Exculpation Parties") shall have or incur any liability to any Holder of a Claim or Equity Interest or any other party in interest, or any of their respective principals, shareholders, members, officers, directors, employees, affiliates, agents, professionals, or representatives, or any of their successors or assigns, for any act or omission in connection with, related to, or arising out of the Bankruptcy Cases, including, without limitation, negotiations regarding or concerning the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence, and, in all respects, the Exculpation Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.*

D.      <u>Retention of Jurisdiction</u>.

After the Effective Date, the Liquidating Trustee will be free to perform all functions assigned to it under the Plan and Liquidating Trust Agreement without approval of the

Bankruptcy Court, except as specifically set forth herein. However, the Bankruptcy Court will continue to retain jurisdiction in these Bankruptcy Cases with respect to the following matters:

1.   All objections to the allowance of Claims and Equity Interests and the compromise of Claims;

2.   All applications for allowance of compensation and reimbursement of out-of-pocket expenses of professionals retained in the Debtors' Bankruptcy Cases by Order of the Bankruptcy Court to the extent that such compensation and out-of-pocket expenses relate to services performed before the Confirmation Date; *provided, however,* that fees of professionals for services rendered after the Effective Date may be paid by the Liquidating Trustee in the ordinary course of business without a Bankruptcy Court Order; *provided, further, however,* in the event that an objection is made as to post-Confirmation Date requested fees or expenses, application shall be made to the Bankruptcy Court for allowance of such fees and expenses;

3.   Any adversary proceedings or contested matters brought by the Debtors or the Liquidating Trustee, including but not limited to the Causes of Action;

4.   All controversies and disputes arising under or in connection with the Plan;

5.   The enforcement and interpretation of the provisions of the Plan;

6.   The issuance of such Orders in aid of execution and consummation of the Plan as may be necessary and appropriate;

7.   Any motion to modify the Plan in accordance with Section 1127 of the Bankruptcy Code, or to correct any defect, cure any omission, or reconcile any inconsistency in the Plan, Disclosure Statement, or any Confirmation Order as may be necessary to carry out the purposes of the Plan;

8.   All Claims arising from the rejection of any executory contract or lease;

9. Such other matters as may be provided for in the Bankruptcy Code or the Plan;

10. The protection of property of the estate or Liquidating Trust from adverse claims or interference inconsistent with the Plan; and

11. Ensuring that Distributions are accomplished, as provided herein, and resolving any dispute concerning the right of any Person to a Distribution hereunder, under applicable law, or under a contract or agreement.

E. Exemption from Transfer Taxes.

Pursuant to Section 1146(a) of the Bankruptcy Code and the Plan, the issuance, transfer, or exchange of notes or securities under the Plan; the creation of any mortgage, deed of trust, or other security interest; the making or assignment of any lease of sublease; or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan (including transfers to the Reorganized Debtors and any subsequent sale by the Reorganized Debtors to any third party) shall not be subject to any stamp, real estate transfer, documentary, registration, sales, added-value, mortgage release, mortgage recording, or similar tax.

F. Headings.

Article, Section, and Paragraph headings used herein are for convenience only and shall not affect the interpretation or construction of any provision of this Plan.

G. Cramdown.

The Debtors reserve the right to seek confirmation of the Plan under Section 1129(b) of the Bankruptcy Code.

H.    <u>Regulatory Approval and Retirement Plans</u>.

It will not be necessary for the Debtors to await any required regulatory approvals from agencies or departments of the United States to consummate the Plan. The Plan will be implemented pursuant to its provisions and the provisions of the Bankruptcy Code.

I.    <u>Notices</u>.

All notices required or permitted to be made in accordance with the Plan shall be in writing and shall be delivered personally, by facsimile transmission, or mailed by United States mail to the following:

To Debtors:

Dakota Plains Holdings, Inc.
P.O. Box 1895
Maple Grove, MN 55311

With copies to:

Counsel for the Debtors:

Elizabeth A. Green, Esquire
Jimmy D. Parrish, Esquire
Baker & Hostetler, LLP
200 S. Orange Avenue
SunTrust Center, Suite 2300
Orlando, Florida 32801-3432

To the Liquidating Trustee:

ADDRESS TO BE PROVIDED WITH THE PLAN SUPPLEMENT

United States Trustee:

U.S. Trustee's Office
Attn: Michael R. Fadlovich
Suite 1015 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415

J.      Manner of Payment.

Any payment of Cash made under this Plan may be made either by check drawn on an account of the Debtors or Liquidating Trustee, by wire transfer, or by automated clearing house transfer from a domestic bank, at the option of the Debtors or Liquidating Trustee, as applicable.

K.      Compliance with Tax Requirements.

In connection with this Plan, to the extent applicable, the Debtors and Liquidating Trustee in making distributions under this Plan shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit and all Distributions, pursuant to this Plan, shall be subject to such withholding and reporting requirements. The Debtors and Liquidating Trustee may withhold the entire Distribution due to any Holder of an Allowed Claim until such time as such Holder provides to the Debtors and Liquidating Trustee, the necessary information to comply with any withholding requirements of any governmental unit. Any property so withheld will then be paid by the Debtors and Liquidating Trustee to the appropriate authority.  If the Holder of an Allowed Claim fails to provide to the Debtors and Liquidating Trustee the information necessary to comply with any withholding requirements of any governmental unit within six (6) months after the date of first notification by the Debtors or Liquidating Trustee to the Holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then the Holder's Distribution shall be treated as an undeliverable distribution in accordance with the Plan. The payment of all taxes on all Distributions shall be the sole responsibility of the distributee.

L.      Transmittal of Distributions to Parties Entitled Thereto.

All Distributions by check shall be deemed made at the time such check is duly deposited in the United States mail, postage prepaid.  All Distributions by wire transfer shall be

deemed made as of the date the Federal Reserve or other wire transfer is made. Except as otherwise agreed with the Holder of an Allowed Claim or as provided in this Plan, any property to be distributed on account of an Allowed Claim shall be distributed by mail upon compliance by the Holder with the provisions of this Plan to: (i) its address set forth in its Proof of Claim; (ii) the latest mailing address filed for the Holder of an Allowed Claim entitled to a Distribution; (iii) the latest mailing address filed for a Holder of a filed power of attorney designated by the Holder of such Allowed Claim to receive Distributions; (iv) the latest mailing address filed for the Holder's transferee as identified in a filed notice served on the Debtors and Liquidating Trustee pursuant to Bankruptcy Rule 3001(e); or (v) if no such mailing address has been filed, the mailing address reflected on the Schedules not defined or in the Debtors' books and records.

M.     Distribution of Unclaimed Property.

Except as otherwise provided in this Plan, any Unclaimed Property distributed under this Plan, shall be forfeited and such Distribution together with all interest earned thereon shall become an asset of the Liquidating Trust.

N.     Fractional Cents; Multiple Distributions.

Notwithstanding any other provisions of this Plan to the contrary, no payment of fractional cents will be made under this Plan. Cash will be issued to Holders entitled to receive a Distribution of Cash in whole cents (rounded to the nearest whole cent). To the extent that Cash remains undistributed as a result of rounding of such fractions, such Cash shall be treated as Unclaimed Property under the Plan.

O.     Revocation and Withdrawal of this Plan.

The Debtors reserve the right to withdraw this Plan at any time before entry of the Confirmation Order. If (i) the Debtors revoke and withdraw this Plan, (ii) the Confirmation Order is not entered, (iii) the Effective Date does not occur, (iv) this Plan is not substantially

consummated, or (v) the Confirmation Order is reversed or revoked, then this Plan shall be deemed null and void.

      P.    <u>Modification of Plan</u>.

      The Debtors may amend or modify this Plan in accordance with Section 1127(b) of the Bankruptcy Code, or remedy a defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.

      RESPECTFULLY SUBMITTED this 9th day of June, 2017.

**FOR DAKOTA PLAINS HOLDINGS,**
**INC., ET AL.**

COUNSEL FOR THE DEBTORS

By: _Marty Beskow_

Marty Beskow
Chief Financial Officer

/e/ Michael F. McGrath
Michael F. McGrath (#168610)
Will R. Tansey (#323056)
150 S. Fifth Street, Suite 3450
Minneapolis, MN  55402
Telephone:  612.317.4744
Email: mfmcgrath@ravichmeyer.com
        wrtanser@ravichmeyer.com

Elizabeth A. Green
Jimmy D. Parrish
BAKER & HOSTETLER LLP
SunTrust Center, Suite 2300
200 South Orange Avenue
Orlando, FL  32801-3432
Telephone:  407.649.4000
Email: egreen@bakerlaw.com
        jparrish@bakerlaw.com

Jorian L. Rose
BAKER & HOSTETLER LLP
45 Rockefeller Center
New York, New York 10111
Telephone: 212.589.4200
Email: jrose@bakerlaw.com

Eric R. Goodman
BAKER & HOSTETLER LLP
127 Public Square, Suite 2000
Cleveland, Ohio  44114
Telephone: 216.621.0200
Email: egoodman@bakerlaw.com